MONROE WEILL et al., Respondents, *v.* TITLE GUARANTEE AND TRUST COMPANY, Appellant, Impleaded with Others.

(Argued January 20, 1936; decided March 17, 1936.)

*C. Elmer Spedick* and *Henry M. Bellinger* for appellant. The Appellate Division erred in reversing findings of fact, on the ground that they are against the weight of evidence to the effect that defendant-appellant did not aid in defaulting creditors. (*Feuer* v. *Schaller*, 115 Misc. Rep. 229; *Wilmerding* v. *Jarmulowsky*, 85 Hun, 285; *Warren* v. *Wilder*, 114 N. Y. 209; *Truesdell* v. *Sarles*, 104 N. Y. 164; *Greenough* v. *Greenough*, 21 Misc. Rep. 727; 32 App. Div. 631; *Mallouk* v. *American Exchange Nat. Bank*, 157 App. Div. 711; *Wasey* v. *Holbrook*, 141 App. Div. 336; 206 N. Y. 708; *Porter* v. *Conner*, 93 N. Y. 118; *Anderson* v. *Blood*, 152 N. Y. 285; *Bernheimer* v. *Rindskopf*, 116 N. Y. 428; *Galle* v. *Tode*, 148 N. Y. 270; *Smith* v. *Wise*, 132 N. Y. 172; *Murphy* v. *Briggs*, 89 N. Y. 446; *Pond* v. *Comstock*, 20 Hun, 492.)

*Irving Lemov* and *William Brooks* for respondents. The title company was a participant in the fraudulent transfer and is chargeable with knowledge of the fraudulent intent of the previous grant. (*Berlenbach* v. *Bischoff*, 137 Misc. Rep. 719; *Ga Nun* v. *Palmer*, 216 N. Y. 603; *Feuer* v.

*Schaller*, 115 Misc. Rep. 229.) Having participated in the fraudulent transfer, the title company is forbidden to appropriate to its own use any part of the consideration brought within its control by virtue of the transfer. (*Frank* v. *Von Bayer*, 236 N. Y. 473.)

CRANE, Ch. J. In 1930 the Woodrich Engineering Co., Inc., was the owner of two hundred vacant lots at Bellaire, borough of Queens. The property was incumbered by a first mortgage held by the Title Guarantee and Trust Company, or the Bond and Mortgage Guarantee Company, of $108,450 which had been a lien upon the property since March 28, 1925. There was a second mortgage of $60,000 which had been a lien since February 15, 1927. There is little, if anything, to show that the value of these two hundred lots was much more than the face of these mortgages. Taxes, which of course were a first lien upon the premises, were unpaid. They amounted to $9,279.73. Interest on the first mortgage had accumulated to the amount of $9,583, which remained unpaid. On the second mortgage there was due $2,441.69. The first mortgage had gone to foreclosure and sale was imminent.

Monroe Weill, Animated Color Advertising, Inc., East New York Stair Building Company and Sidney M. Spero in 1930 had recovered judgments in comparatively small amounts against the Woodrich Engineering Co., Inc., all of which were subordinate to the two mortgages mentioned, the interest due thereon and the taxes. The Appellate Division has erroneously given these judgment creditors priority over the interest on these mortgages which, as above stated, were prior liens.

The Title Guarantee and Trust Company, or the Bond and Mortgage Company, were not strangers to this property nor did they intermeddle illegally with the affairs of Woodrich Engineering Co., Inc., when they tried to collect the interest due in behalf of mortgage certificate holders. A mortgagee is naturally interested in getting his interest, and he is entitled to it when a

first lienor, in preference to later judgment creditors. The Woodrich Engineering Co., Inc., on January 8, 1930, conveyed the lots in question to Geridans Realtors, Inc., without consideration. For the purposes of this transaction Isabelle S. Fajans, the intermediary, and Geridans Realtors, Inc., were dummies for the Woodrich Engineering Co., Inc. Whatever they did was done for the latter company, and was its act.

On July 15, 1931, Geridans Realtors, Inc., contracted to sell to the Parkcrest Housing Corporation of Jamaica, for good and valuable consideration, the property in question, subject to the first mortgage of $108,450, with interest at six per cent, payable semi-annually, and subject to a $70,000 second mortgage, the previous second mortgage to be increased from $60,000 to $70,000 by having this additional $10,000 added to it, all at six per cent. In other words, the $10,000 increase became a third mortgage and, further, the Parkcrest Housing Corporation was to pay $10,000 upon the signing of the contract and $11,500 on the delivery of the deed, as therein provided. The transaction was put through and the matter closed on September 10, 1931.

It is right here at this point that the mistake below has occurred. The Parkcrest Housing Corporation, the *bona fide* purchaser for value, did not agree in its contract of sale to pay $21,500 in cash to the Woodrich Engineering Co., Inc., or to its dummy, Geridans Realtors, Inc. It was not going to take the property subject to the accumulation of interest on these two mortgages. This interest had to be paid off and it made no difference whether the interest was paid to the title company, the bond and mortgage company, Geridans or Woodrich; the contract was that this past interest had to be paid. Therefore, we find the contract providing the conditions upon which the $21,500 is to be paid, and the purpose for the payment. The contract reads: " which sum [$10,000] shall be paid to the Title Guarantee and Trust Company and by them applied * * * on account of interest on

mortgages, taxes and assessments covering these premises."
The same applied to the payment of $11,500 on the
delivery of the deed, " which sum shall be paid to the
Title Guarantee and Trust Company and by them applied
* * * on account of interest on mortgages, taxes and
assessments covering these premises."

The Parkcrest Housing Corporation was not obliged to
purchase these lots and it could enter into such agreement
as to price and terms as it pleased. It agreed to take the
property subject to the two mortgages, and also agreed
to put up $21,500 to pay off the taxes and past interest
charges. Likewise it agreed to increase the incumbrance
of the second mortgage from $60,000 to $70,000, or to
give an additional $10,000 mortgage, as it has been
called. All of these amounts of interest and taxes were
prior liens to the plaintiffs, respondents' judgments.
By what process of reasoning are priorities exchanged so
that the judgments are given precedence?

On September 10, 1931, the Parkcrest Housing Corpora-
tion took title and paid the money. There is no evidence
as to the value of these lots, or any attempt to show that
the Parkcrest Housing Corporation did not pay a fair
value. There is no evidence that these properties in 1930
were of much more value than the amounts of the mort-
gages. The defaults in interest and taxes are some indi-
cation of the financial condition. When the title com-
pany received the $21,500 it paid $9,279.73 taxes due,
$9,583.09 accrued interest on the first mortgage, $2,441.69
accrued interest on the second mortgage, and $194.40
costs upon the discontinuance of the foreclosure action
which had almost gone to sale. This disposed of the
money it had received, every penny of which these judg-
ment creditors would have had to pay before they could
have had any advantages from their liens out of the
property in question.

By no possibility or by any law known to us could any
of these amounts be made subservient to the judgments
of the plaintiffs upon the facts in this case. The title

company was entitled to its interest on the first and second mortgages which, as we have said, was a lien superior to that of the judgment creditors, and the taxes of course were superior to all.

The counsel for the respondents in his brief admits that if the Woodrich Company had kept the property it could have paid these interest charges and the taxes, and no possible claim of fraud would have arisen. To quote him, he says, " Having been apprised of the interest that the ' Woodrich ' had in the real property from the very provisions of the contract, why did not the ' Title Company ' procure an authorization from the board of directors of the ' Woodrich ' to apply the proceeds in that manner? " This is just what the Woodrich Company did do. The contract made by Geridans Realtors, Inc., was in reality the contract of Woodrich Engineering Co., Inc.; the former was a mere dummy for the latter, and this contract thus made by and for Woodrich provided, as we have seen above, for the payment of these past items of interest and taxes. As before stated, whether Woodrich paid these items or the Title Guarantee and Trust Company paid them, they had to be paid by somebody, for they came out of the property before the judgment creditors had any right to it. The tax and interest liens being superior remained such to the end.

This being so, the title company can be charged with no fraud in taking these moneys and paying prior liens. In view of these facts any finding of fraud on the part of the title company is clearly against the weight of evidence.

For these reasons the judgment of the Appellate Division should be reversed, and that of the Special Term affirmed, with costs in this court and the Appellate Division.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur; CROUCH, J., dissents.

Judgment accordingly.